### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------X
                             :
JOSUE CRUZ                   :    Civil No. 3:22CV00347(SALM)
                             :
v.                           :
                             :
DR. NAQVI, R.N. ADAM L.      :    July 5, 2022
CUMMINGS, NURSE SUPERVISOR   :
FURTICK, RN SHANYA GRAHAM,   :
RCOO SHEA, APRN SAHRA, WARDEN :
BARONE and ROSE W.           :
                             :
-----------------------------X
```

### <u>INITIAL REVIEW ORDER</u>

Self-represented plaintiff Josue Cruz ("Cruz" or

"plaintiff"), a pretrial detainee[1] currently confined at

MacDougall-Walker Correctional Center ("Walker"), brings this

action pursuant to 42 U.S.C. §1983 against eight current or

former DOC employees: Dr. Syed Naqvi, RN Adam L. Cummings, Nurse

Supervisor Tawana Furtick, Nurse Shanya Graham, RCOO Kristen

Shea, APRN Sahra Sachour, Warden Kristine Barone, and Rose

---

[1] The Court may take judicial notice of matters of public record.
<u>See</u>, <u>e.g.</u>, <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir.
2006); <u>United States v. Rivera</u>, 466 F. Supp. 3d 310, 313 (D.
Conn. 2020) (taking judicial notice of BOP inmate location
information); <u>Ligon v. Doherty</u>, 208 F. Supp. 2d 384, 386
(E.D.N.Y. 2002) (taking judicial notice of state prison website
inmate location information). The Court takes judicial notice of
the Connecticut DOC website, which reflects that plaintiff is
currently a pretrial detainee confined at the MacDougall-Walker
Correctional Center. <u>See</u>
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=2
79366 (last visited July 5, 2022).

Walker. See Doc. #1 at 1-3. Plaintiff proceeds in forma pauperis. See Doc. #14.

Plaintiff filed his Complaint using a District of Connecticut Pro Se Prisoner Civil Rights Complaint form. See generally Doc. #1. However, the bulk of plaintiff's allegations are made in a handwritten statement, rather than on the form itself. See Doc. #1-1 at 1-14.[2] Accompanying the form and the handwritten statement are more than 100 pages of attachments, many of which are inmate request and grievance forms or copies of medical records. See id. at 15-150. The Court construes the Complaint as bringing claims against all defendants for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment. Plaintiff does not seek injunctive relief. Rather, plaintiff seeks only money damages, in the amount of either $200,000 or $250,000. See Doc. #1 at 6; Doc. #1-1 at 14. Any claims for money damages against the defendants, who are state employees, in their official capacities, would be barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). "Section 1983 does not abrogate state sovereign immunity. Nor has [plaintiff] alleged any facts suggesting that the state has waived immunity in this case."

---

[2] When quoting plaintiff's submissions, the Court has done its best to accurately reflect his precise language, but has not always reproduced his capitalization.

Kerr v. Cook, No. 3:21CV00093(KAD), 2021 WL 765023, at *5 (D. Conn. Feb. 26, 2021) (citation omitted). Accordingly, the Court construes the Complaint as being brought against all defendants in their individual capacities only.

The Court construes the Complaint as asserting Fourteenth Amendment deliberate indifference claims relating to four separate medical conditions or issues: (1) a November 10, 2019, injury to plaintiff's hand or thumb; (2) a March 23, 2020, injury to plaintiff's ankle; (3) a failure to provide physical therapy for plaintiff's ankle after the UConn Health Center prescribed physical therapy in July 2021; and (4) a November 2021 reaggravation of the ankle injury. See generally Doc. #1-1.

I.   **STANDARD OF REVIEW**

Under section 1915A of Title 28 of the United States Code, the Court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). The Court then must "dismiss the complaint, or any portion of the complaint, if" it "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). Dismissal under this provision may be with or without prejudice. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

3

A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). However, even self-represented parties must satisfy the basic rules of pleading, including the requirements of Rule 8. See, e.g., Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

## II.  **DISCUSSION**

A pretrial detainee may bring a deliberate indifference to serious medical needs claim under the Fourteenth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). "To state such a claim, a plaintiff must plead facts showing that [he] had a serious medical condition and that it was met with deliberate

4

indifference." <u>Bruno v. City of Schenectady</u>, 727 F. App'x 717, 720 (2d Cir. 2018) (citation and quotation marks omitted). A "serious medical condition" for these purposes is one that "is, in objective terms, sufficiently serious -- that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005) (citations and quotation marks omitted).

If a plaintiff establishes that he had a serious medical need, the plaintiff must next show that a particular defendant was deliberately indifferent to that need. <u>See</u> <u>Charles v. Orange Cnty.</u>, 925 F.3d 73, 86 (2d Cir. 2019). In the Fourteenth Amendment context, deliberate indifference "can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." <u>Id.</u> "Thus, a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants <u>knew</u> that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants <u>should have known</u> that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." <u>Id.</u> at 87.

However, "mere medical malpractice is not tantamount to deliberate indifference absent a showing of conscious disregard

of a substantial risk of serious harm." Darby v. Greenman, 14 F.4th 124, 129 (2d Cir. 2021) (citation and quotation marks omitted). Likewise "a difference of opinion about the proper course of treatment ... does not demonstrate deliberate indifference to a substantial risk of harm to [a detainee's] health." Id.

"[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. ...  The violation must be established against the supervisory official directly." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (citation and quotation marks omitted).

### A.   Warden Barone and Nurse Supervisor Furtick

Plaintiff asserts claims against Warden Barone and Nurse Supervisor Furtick based solely on their alleged failures to respond to his written complaints. See Doc. #1-1 at 2 (alleging that plaintiff "kept on writing" to Barone, Furtick, and others, and his requests were "never answered back"); id. ("I've have written [Barone and Furtick] about what is going wit medical and no respond back" (sic)); id. at 3 (alleging that plaintiff "started to write to" Barone, Furtick, and others, but "no one hasen't responded" (sic)); id. at 7-8 (alleging that plaintiff wrote to Barone, Furtick, and others after a July 2021 orthopedic appointment about follow-up, and two months later he

6

was sent to see Dr. Naqvi, but not alleging that Barone or
Furtick ever responded); id. at 8-9 (alleging that plaintiff
wrote to Barone, Furtick, and others after the appointment with
Dr. Naqvi but got "no response back from any of these people");
id. at 11 (alleging that plaintiff wrote to Barone, Furtick, and
others about a November 2021 incident but got "no answer
back[]").[3]

These allegations are insufficient to support a §1983 claim
against defendants Barone and Furtick. When bringing a claim
pursuant to §1983, "a plaintiff must plead and prove 'that each
Government-official defendant, through the official's own
individual actions, has violated the Constitution.'" Tangreti,
983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676). An alleged
constitutional "violation must be established against the
supervisory official directly[]" and cannot be based on
supervisory liability. Id.

Failure to respond to a complaint is not sufficient to
support individual liability under §1983. See, e.g., Young v.

---

[3] The Court notes that plaintiff has attached to the Complaint
two grievances that were denied by Warden Barone. See Doc. #1-1
at 27, 29. Each grievance was denied on the basis that it was
untimely, by over a year. Plaintiff makes no allegations
regarding these grievance rejections. These grievance
rejections, based solely on untimeliness, are not sufficient to
establish that Warden Barone "fail[ed] to act with deliberate
indifference to a substantial risk of serious harm to"
plaintiff. Farmer v. Brennan, 511 U.S. 825, 836 (1994).

Choinski, 15 F. Supp. 3d 172, 190 (D. Conn. 2014) (Failure to respond does not demonstrate personal involvement.); Lebron v. Semple, No. 3:18CV01017(JAM), 2018 WL 3733972, at *4 (D. Conn. Aug. 6, 2018) ("Courts have held that a failure to respond to a letter of complaint does not constitute the personal involvement necessary to maintain a section 1983 claim.") (citation and quotation marks omitted); Blaine v. UConn Health Care, No. 3:18CV00359(MPS), 2018 WL 3448165, at *3 (D. Conn. July 17, 2018) ("[F]ail[ure] to respond to the plaintiff's letter regarding his medical condition and delayed treatment ... is insufficient to show a constitutional deprivation."); Saidock v. Carrington-McClain, No. 3:19CV01319(KAD), 2019 WL 4450678, at *3 (D. Conn. Sept. 16, 2019) ("The failure of an official to respond to a letter or grievance is, alone, insufficient to show personal involvement.").

Accordingly, all claims against Warden Barone and Nurse Supervisor Furtick are **DISMISSED, without prejudice**, for failure to adequately allege personal involvement.

### B.   Rose Walker

Plaintiff makes only one reference to Rose Walker in the body of his handwritten statement: "I write Rose Walker Health Remedy lady to take care of these issue no responce from her to take of these issue or even respond the grievances. Then I have no choice to deal with this pain and keep written for something

gets done some day." Doc. #1-1 at 9 (sic). As noted, the failure
to respond to a complaint is, on its own, is insufficient to
support individual liability under §1983.

There is one Inmate Request Form attached to the Complaint
that was responded to by Rose Walker. On October 23, 2021,
plaintiff submitted an Inmate Request Form to Walker asking her
to intervene because Dr. Naqvi was refusing to prescribe him the
same medicine he was prescribed when not in custody,
specifically, Tramadol and Vicodin. See Doc. #1-1 at 117. Walker
responded: "I forwarded this request to medical sick call." Id.

It appears that plaintiff disagreed with Dr. Naqvi's
treatment decision regarding what form of pain medication to
prescribe. This mere disagreement with a treatment decision is
insufficient to support a claim for deliberate indifference. See
Darby, 14 F.4th at 129 (dismissing Fourteenth Amendment
deliberate indifference claim where plaintiff's allegation
"constitutes, at most, a difference of opinion about the proper
course of treatment; it does not demonstrate deliberate
indifference to a substantial risk of harm to [plaintiff's]
health[]"). Accordingly, Walker's response to the complaint
about that disagreement likewise cannot support such a claim.
Plaintiff has thus failed to state a Fourteenth Amendment
deliberate indifference claim against Rose Walker based upon her
response to his Inmate Request Form.

Accordingly, all claims against Rose Walker are **DISMISSED**, **without prejudice**.

### C.   RCOO Kristen Shea

Plaintiff asserts claims against RCOO Shea based both on her responses, and her alleged failures to respond, to his written complaints. See, e.g., Doc. #1-1 at 2 ("Till this day now I have [ankle] pain and swollen soft tissue an complications. I kept on writing bothering medical ... RCOO Shea ... grievances, request never answered back or issue resolve[d]."); id. ("I've have written to [RCOO Shea] about what is going wit[h] medical and no respon[se] back[.]"); id. at 3 ("I started to write to" RCOO Shea, but received "no responce back about the situation to this day now no one hasn't responded to my grievances, request to solve these issues[.]" (sic)); id. at 7 ("[F]or 3 months I wrote to ... RCOO Shea ... that I need to be seen for sick call, medical refuse to see me for 3 months for my left ankle pain I was complaining swollen, black & blue, but I wasn't seen."); id. at 8 ("I'm still in so much pain can't even stand, so I write sick call many times to be seen, but they don't call me, so write to" RCOO Shea, among others, but received "no responce back[.]") (sic); id. at 11 ("I wrote to ... RCOO Shea ... about" RN Cummings' failure to fill out an Incident Report in front of plaintiff, but received "no answer back."). As noted above, supra at 8, the failure to respond to a

complaint, without more, is insufficient to support individual liability under §1983.

As relevant here, plaintiff has attached three Inmate Request Forms to which RCOO Shea <u>did</u> respond.[4] Two of these Inmate Request Forms were submitted on March 5, 2021. <u>See</u> Doc. #1-1 at 94, 95.

One of those forms states, in relevant part: "I'm asking u again to do something better about medical system that sucks right now. I don't understand how I have to wait 3 to 4 months to be called for sick call and to see Dr. Naqvi[.]" <u>Id.</u> at 94 (sic). In response to plaintiff's Inmate Request Form, RCOO Shea instructed plaintiff to "see attached[.]" <u>Id.</u> However, the attachment referenced by RCOO Shea is not provided by plaintiff.

RCOO Shea's response to this Inmate Request Form does not support a claim that she acted with deliberate indifference to plaintiff's medical needs. To adequately set forth a Fourteenth Amendment deliberate indifference claim, plaintiff must assert facts showing that RCOO Shea "<u>knew</u> that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants <u>should have known</u> that failing

---

[4] Plaintiff has attached two additional Inmate Request Forms that were responded to by RCOO Shea, but concern injuries that are not relevant to plaintiff's Complaint. <u>See</u> Doc. #1-1 at 93 (complaint concerning spine injury); <u>id.</u> at 97 (complaint concerning shoulder injury, chest tightness, and sinus/bee allergies).

to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Charles, 925 F.3d at 87. However, this Inmate Request Form (Doc. #1-1 at 94) does not identify any specific injury. To the contrary, plaintiff's Inmate Request Form simply attacks the medical system as a whole. As a result, plaintiff has not alleged that RCOO Shea knew or should have known that her actions posed a risk to plaintiff's health because the form submitted by plaintiff does not identify any injury that he suffered. Plaintiff has thus failed to state a claim for relief based upon this Inmate Request Form.

Plaintiff submitted a second Inmate Request Form to RCOO Shea on March 5, 2021. See Doc. #1-1 at 95. That Inmate Request Form states:

> I've been complainig about my right hand thumb that, I'm having complication with pain, numbness, thigthning and falling asleep my hand and it don't want to work until I let it relax. What is going with seeing a specialist b.c. it seem like nothing is been done here no therapy, no other pain medication that will work that Dr. Naqvi refuses to do for me. Dr. Naqvi is rarely here so u don't see him much at work and when he do come in he don't do his job correctly.

Id. (sic). In response, RCOO Shea directed plaintiff to "[s]ee attached[.]" Id. However, the referenced attachment was not provided by plaintiff.

RCOO Shea additionally responded to an Inmate Request Form submitted by plaintiff on April 16, 2021. See Doc. #1-1 at 98.

12

This Inmate Request Form states:

> I've been asking u, AND Dr. Naqvi, RN Shanya other nurses
> to call me down for physical therapy 1 ½ years that I've
> been waiting for my injuries of my right hand that, I've
> complaint about to you'll that Dr. Naqvi said he was
> going to request physical therapy treatment a long time
> ago that Dr. Naqvi and no one else has done, mean every
> morning I come to medical for a patch and I see Inmates
> their everyday doing physical therapy but then you'll
> forget about me, that's not right[.]

Id. (sic). RCOO Shea directed plaintiff to "[s]ee previous response[.]" Id. However, it is unclear from plaintiff's Complaint what response RCOO Shea directed plaintiff to review.

These two complaints assert chronic pain and functional problems with plaintiff's right hand. They were responded to directly by RCOO Shea. As such, they may be sufficient to support a claim against RCOO Shea in her individual capacity for damages. Accordingly, the claim for deliberate indifference against RCOO Shea may proceed for further development based on these two complaints. This is without prejudice to the filing of a motion to dismiss, if appropriate.

Plaintiff has failed, however, to state a Fourteenth Amendment deliberate indifference claim based upon RCOO Shea's failure to respond to his other complaints. Accordingly, plaintiff's claims relating to these allegations are hereby **DISMISSED, without prejudice.**

### D.   RN Adam Cummings

Plaintiff's allegations against RN Cummings relate

13

exclusively to Cummings' examination of plaintiff following the reaggravation of plaintiff's ankle injury on November 11, 2021. See Doc. #1-1 at 10. During that examination, RN Cummings provided plaintiff with ice but refused to give plaintiff an Ace bandage or Tylenol, after confirming that plaintiff had Tylenol in his cell. See id.

After the examination, plaintiff asked RN Cummings "to write the Incident Report right now, so I [could] sign it[.]" Id. RN Cummings refused, however, and indicated that he would "do it later[.]" Id. Plaintiff responded that RN Cummings was required "to do it now so I could sign it" under "medical polic[y] protocol[.]" Id.

RN Cummings told plaintiff: "I'm busy right now, I'll write it later[.]" Id. He did not complete the Incident Report while plaintiff was present. See id. at 11.

Plaintiff alleges that RN Cummings did not complete the Incident Report until November 17, 2021. See id. at 14. Plaintiff contends that Cummings "lied on the report saying I fell on purpose and he also put that I was incompident to sign when that was not true, he violated my right and he violated Policie Protocol." Id. (sic).

The Court construes plaintiff's Complaint as alleging that Cummings acted with deliberate indifference to his medical needs when he: (1) refused to provide plaintiff with an ACE bandage or

14

his "nightly meds[,]" id. at 11; (2) failed to write an Incident Report in front of plaintiff; and (3) fabricated information on the Incident Report that he ultimately prepared. See id. at 10-14. Plaintiff has failed to state a claim for relief under any of these theories.

Plaintiff first asserts that RN Cummings refused to provide him with an ACE bandage or his "nightly meds[.]" Id. at 10-11. Plaintiff concedes, however, that RN Cummings provided him with ice and ensured that he had Tylenol. See id. at 10. Plaintiff's claims "constitute[], at most, a difference of opinion about the proper course of treatment[.]" Darby, 14 F.4th at 129. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Plaintiff has thus failed to state a claim under this theory.

Plaintiff has similarly failed to state a claim for deliberate indifference to serious medical needs arising from RN Cummings' failure to prepare an Incident Report in plaintiff's presence. Plaintiff's complaint does not assert that Cummings' delay in completing the Incident Report created a risk to his health or safety. Rather, plaintiff merely alleges that Cummings violated DOC policy. See Doc. #1-1 at 11. This allegation is insufficient to support a claim for deliberate indifference under the Fourteenth Amendment. See Fonck v. Allen, No.

3:19CV01665(KAD), 2019 WL 5597739, at *3 (D. Conn. Oct. 30, 2019) ("[T]he failure to follow prison directives or procedures is not a constitutional violation."); see also White v. Rock, No. 9:13CV00392(GTS)(CFH), 2016 WL 11478222, at *12 (N.D.N.Y. Feb. 23, 2016), report and recommendation adopted, 2016 WL 1248904 (N.D.N.Y. Mar. 29, 2016) ("The claim that a defendant failed to file an injury report is insufficient to satisfy the subjective prong of the deliberate indifference test.").

Finally, plaintiff has failed to state a claim for deliberate indifference against RN Cummings based on the allegation that the Incident Report was false or inaccurate. Plaintiff asserts:

> I look what he wrote and nothing of all the injuries were it was red was not put on the incident report and he lied on the report saying I fell on purpose and he also put that I was incompident to sign when that was not true, he violated my right and he violated policie protocol.

Doc. #1-1 at 14 (sic).

Plaintiff fails to make any "allegations as to how this alleged false document caused him to be deprived of care for a serious medical need." Evans v. Barone, No. 3:22CV00074(SALM), 2022 WL 408920, at *4 (D. Conn. Feb. 10, 2022); see also Oliver v. Haddock, No. 08CV04608(DAB)(GWG), 2009 WL 4281446, at *6 (S.D.N.Y. Dec. 1, 2009), report and recommendation adopted, 2010 WL 305282 (S.D.N.Y. Jan. 22, 2010) ("However, this allegedly

16

false report of [plaintiff's] symptom is simply insufficient to show that that [defendant] acted with deliberate indifference to [plaintiff's] medical needs."); Robinson v. Clark, No. 15CV08434(KMK), 2017 WL 775813, at *9 (S.D.N.Y. Feb. 27, 2017) (holding that claims relating to falsified medical document were "insufficient to state a claim of deliberate indifference because they do not relate in any way to the medical treatment Plaintiff received[]"). Plaintiff has failed to state a claim for deliberate indifference under this theory.

Accordingly, plaintiff has failed to state a viable claim against RN Cummings for deliberate indifference to the reaggravation of his ankle injury. Plaintiff's claims against RN Cummings are therefore **DISMISSED, without prejudice.**

**E.   RN Shanya Graham**

The Complaint asserts claims against RN Graham regarding: (1) her treatment of plaintiff following his November 10, 2019, thumb and hand injury; (2) her treatment of plaintiff following his March 23, 2020, ankle injury; and (3) her alleged failure to respond adequately to his complaints generally. See generally Doc. #1-1.

### 1.   November 10, 2019, Thumb and Hand Injury

Plaintiff asserts that following his November 10, 2019, thumb/hand injury, RN Graham: (1) "told C.O. Brown that she was busy and she'll try to call me later on[,]" ultimately forcing

plaintiff to wait nearly an entire day before receiving medical attention, Doc. #1-1 at 4-5; (2) "looked at my hand and gave me ice, Ace bandage told me to leave [because] she was busy[,]" id. at 5; and (3) "didn't write an incident report" concerning her visit with plaintiff. Id. These claims, considered together or separately, fail to state a claim upon which relief can be granted.

Plaintiff first contends that RN Graham forced him to wait for most of a day, on November 11, 2019, before providing medical attention for his hand injury. "The Second Circuit has repeatedly held that ... a brief delay in treatment falls short of a Constitutional violation." Bland v. Franceschi, No. 3:16CV01406(KAD), 2019 WL 356828, at *5 (D. Conn. Jan. 29, 2019) (citing Demata v. N.Y. State Corr. Dep't of Health Servs., 198 F.3d 233 (2d Cir. 1999)). Where a plaintiff's deliberate indifference claim is based on a delay in treatment, "the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Demski v. Town of Enfield, No. 3:14CV01568(VAB), 2017 WL 486262, at *10 (D. Conn. Feb. 6, 2017) (citation and quotation marks omitted). Thus, it is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the

18

abstract, that is relevant" for purposes of establishing
deliberate indifference in this context. Smith v. Carpenter, 316
F.3d 178, 186 (2d Cir. 2003).

"Where temporary delays or interruptions in the provision
of medical treatment have been found to satisfy the objective
seriousness requirement in this Circuit, they have involved
either a needlessly prolonged period of delay, or a delay which
caused extreme pain or exacerbated a serious illness." Massey v.
Bolanos, No. 20CV08592(LGS), 2021 WL 6125804, at *2 (S.D.N.Y.
Dec. 28, 2021) (citation and quotation marks omitted).

Plaintiff asserts that he was "in a lot of pain can't move
my hand swollen black & blue[.]" Doc. #1-1 at 5. Even assuming
that the hand injury is a serious condition sufficient to
support a constitutional claim, plaintiff has not alleged that
RN Graham acted with the necessary mens rea. The Complaint
suggests that RN Graham was informed that plaintiff had a hand
injury; such an injury may be painful, but is unlikely to be
life-threatening. Plaintiff's credible complaint of pain would
not have been sufficient, under the circumstances, to alert
Graham that he needed treatment immediately. See, e.g.,
Washington v. O'Mahony, No. 16CV09546(ER), 2020 WL 1285851, at
*5 (S.D.N.Y. Mar. 18, 2020) ("Although the Court appreciates
that [plaintiff] was in pain during this time, his cannot be
characterized as a condition of urgency that mandated more swift

treatment than he received." (citation and quotation marks omitted)). Indeed, the injury had occurred the prior day, and had not been reported to medical at that time.

Plaintiff has not adequately alleged that RN Graham "knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that [RN Graham] should have known that failing to provide the omitted medical treatment would pose a substantial risk to [his] health." Charles, 925 F.3d at 87; see also Crispin v. Roach, No. 3:20CV01184(KAD), 2020 WL 6263185, at *5 (D. Conn. Oct. 23, 2020) (dismissing deliberate indifference claim where plaintiff failed to allege "that his condition, during this delay, worsened or that he was subject to increased risk of harm"). The delay in treatment on November 11, 2019, does not support a claim for deliberate indifference against RN Graham.

Plaintiff next asserts that when RN Graham did see him, later that day, she "[g]ave me ice, Ace bandage told me to leave b.c. she was busy[.]" Doc. #1-1 at 5. To the extent plaintiff contends this was insufficient to treat plaintiff's injuries, such an allegation "constitutes, at most, a difference of opinion about the proper course of treatment; it does not demonstrate deliberate indifference to a substantial risk of harm to [plaintiff's] health." Darby, 14 F.4th at 129. As such, it is insufficient to support a claim for deliberate

indifference against RN Graham.

Finally, plaintiff asserts that RN Graham "didn't write an incident report at all[.]" Doc. #1-1 at 5. However, as previously noted, where plaintiff has not alleged that the decision not to write an Incident Report created any risk to plaintiff's health, "[t]he claim that a defendant failed to file an injury report is insufficient to satisfy the subjective prong of the deliberate indifference test." White, 2016 WL 11478222, at *12. Plaintiff has failed to state a claim for deliberate indifference under this theory.

Even considering all of plaintiff's allegations against RN Graham regarding her treatment of his hand and thumb injuries together, they do not support a claim for deliberate indifference to a serious medical need.

> 2.  March 23, 2020, Ankle Injury

Plaintiff further alleges that, following his March 23, 2020, ankle injury, RN Graham "refuse[d] to see me, so I had to wait until 2nd shift[,]" before receiving treatment. Doc. #1-1 at 1. However, as described above, to state a claim for deliberate indifference based upon a delay in treatment, plaintiff must allege that "that the delay itself caused or exacerbated the [injury], caused him extreme pain, or caused any permanent harm." Frith v. City of New York, 203 F. Supp. 3d 386, 390 (S.D.N.Y. 2016). While plaintiff alleges that he was

"limping in a lot of pain[,]" Doc. #1-1 at 1, he does not assert facts showing that his injuries were "so urgent or life-threatening that they required immediate care." Rodriguez v. Mercado, No. 00CV08588(JSR)(FM), 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002). Plaintiff has thus failed to state a claim for Fourteenth Amendment deliberate indifference under this theory. See Chatin v. Artuz, 28 F. App'x 9, 10-11 (2d Cir. 2001) (finding two-day delay in x-raying injured ankle, and failure to provide plaintiff with crutches immediately failed to satisfy objective element of deliberate indifference test).

Even assuming that the ankle injury is a serious condition sufficient to support a constitutional claim, and the delay of several hours rose to a constitutional deprivation of care, plaintiff again has not alleged that RN Graham acted with the necessary mens rea. He has not alleged that RN Graham "knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that [RN Graham] should have known that failing to provide the omitted medical treatment would pose a substantial risk to [his] health." Charles, 925 F.3d at 87. The delay in treatment on March 23, 2020, does not support a claim for deliberate indifference against RN Graham.

3.   Responses to Plaintiff's Complaints

Finally, plaintiff alleges that RN Graham failed to respond adequately to his complaints generally. Plaintiff asserts that

he wrote to RN Graham that "I need to be seen for sick call, medical refuse to see me for 3 months for my left ankle pain I was complaining swollen, black & blue, but I wasn't seen." Doc. #1-1 at 7.[5]

Plaintiff's Complaint includes three Inmate Request Forms that were submitted by plaintiff on March 5, 2021, and were responded to by RN Graham.[6]

The first Inmate Request Form is addressed to Furtick. See Doc. #1-1 at 56. This Inmate Request Form duplicates one of the forms that plaintiff submitted to RCOO Shea on March 5, 2021. Compare Doc. #1-1 at 56 with Doc. #1-1 at 94. The form states, in part: "I am asking you again to do something better about medical system that sucks right now. I don't understand how I have to wait 3 to 4 months to be called for sick call and to see Dr. Naqvi[.]" Id. at 56. In response, RN Graham listed plaintiff's recent appointments with medical, and noted that he had been transferred to the COVID Unit from February 13, 2021, through March 1, 2021. See id.

---

[5] Plaintiff additionally alleges that RN Graham failed to respond to his complaints. See Doc. #1-1 at 2-3. However, for the reasons set forth above, supra at 8, the failure to respond to a complaint, without more, is insufficient to support individual liability under §1983.

[6] Plaintiff has attached two additional Inmate Request Forms that were responded to by RN Graham, but concern injuries that are not relevant to plaintiff's Complaint. See Doc. #1-1 at 67 (shoulder injury); id. at 72 (back injury).

23

To state a claim for deliberate indifference, plaintiff must allege that RN Graham "knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the [she] should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Charles, 925 F.3d at 87. However, plaintiff's complaint about the medical system as a whole fails to point to any injury that required medical attention. Absent such an allegation, plaintiff has failed to set forth facts which, if proven, would demonstrate that RN Graham knew or should have known that a delay in treatment posed a risk to plaintiff's health. Plaintiff has thus failed to state a claim for relief under this theory.

The remaining Inmate Request Forms attached to plaintiff's Complaint similarly fail to state a claim upon which relief can be granted.

One of these Inmate Request Forms again duplicates a form submitted by plaintiff to RCOO Shea. Compare Doc. #1-1 at 95 with Doc. #1-1 at 125. This Inmate Request Form states:

> I've been complaining about my right hand thumb that, I'm having complication with pain, numbness, tightning and falling asleep with my hand and it don't want to work until I let it relax. What is going with seeing a specialist b.c. it seem like nothing is been done here no therapy, no other pain medication that will work that Dr. Naqvi refuses to do for me. Dr. Naqvi is rarely here so u don't see him much at work and when he do come in he don't do his job correctly.

24

Id. at 125 (sic). On April 8, 2021, RN Graham responded that plaintiff was "seen by Dr. Naqvi on 3/17/2021. Seen in sick call 3/7/2021." Id.

The third relevant Inmate Request Form addresses plaintiff's ankle injury, stating:

> I've been complaining about my left ankle that hurts every single day to medical about whats going with seeing a specialist because here in medical nothing is being done, no therapy, no pain meds that will work that I've been asking Dr. Naqvi the little time that I've seen him to give me some pain medication that will work and he refuses to do so. I'm having trouble standing long and walking because of the pain I feel.

Id. at 126. On April 8, 2021, RN Graham responded: "Seen by Dr. Naqvi on 3/17/2021 for joint pain. Recommend and added Tylenol and Gabapentin for pain control. Follow-up appointment scheduled." Id.

These complaints geneally take issue with Dr. Naqvi's treatment of plaintiff and his failure to "do his job correctly." Id. at 125. However, RN Graham's responses to these complaints do not exhibit deliberate indifference to plaintiff's medical condition. To the contrary, RN Graham's responses reflect that RN Graham investigated plaintiff's complaints, and ensured that he had been evaluated and treated for the injuries described in these Inmate Request Forms. See Davis v. Furey, No. 3:19CV01867(JCH), 2021 WL 2827366, at *6 (D. Conn. July 6, 2021) (granting summary judgment to defendant where "[t]he record

evidence establishes that [defendant] issued timely responses to [plaintiff's] written Inmate Requests for treatment and Health Services Reviews, appeals, as well as arranged for [plaintiff] to receive medical care[]"). Because plaintiff has not adequately alleged that RN Graham acted with deliberate indifference to his medical needs, he has failed to state a claim for relief based on her responses to his complaints generally.

Accordingly, plaintiff has failed to state a claim for Fourteenth Amendment deliberate indifference to serious medical needs against RN Graham. Plaintiff's claims against RN Graham are hereby **DISMISSED, without prejudice.**

### F.   APRN Sahra Sachour

Plaintiff asserts that APRN Sachour failed to provide him with the physical therapy for his ankle as prescribed by UConn Health Center in July 2021, and that she failed to provide adequate treatment for his ankle when he reinjured it in November 2021. See Doc. #1-1 at 7-13. Plaintiff further asserts that APRN Sachour told him that she would look into RN Cummings' failure to sign an Incident Report at the conclusion of RN Cummings' examination of plaintiff in November 2021, but "she never did." Id. at 12.

The Court will permit plaintiff's claim relating to the physical therapy that was ordered for his ankle in July 2021 to

proceed to service against APRN Sachour in her individual capacity for monetary damages. Plaintiff asserts that APRN Sachour: (1) "refuse to give me ace bandage, ice, or ankle brace, and physical therapy, she 'said' you have to talk to Dr. Naqvi[,]" despite such treatments being ordered by the UConn Health Center, id. at 7 (sic); (2) did not respond to plaintiff's complaints that Dr. Naqvi refused to provide him with the requested physical therapy, see id. at 8; and (3) "[t]o this day I'm still waiting for ... Sahra to order me physical therapy and a ankle brace which it hasn't happen yet[.]" Id. at 13 (sic).

As to plaintiff's November 2021 reaggravation of his ankle injury, plaintiff asserts: "On November 12 ... APRN Sahra sees me checks my injuries sees I'm in pain she order to be put on Ice pack for 3 days to take the swolleness down, but didn't give me ACE bandage or even physical therapy that UConn Hospital recommended and a ankle brace[.]" Id. at 11-12. This allegation supports plaintiff's claim regarding the denial of physical therapy. However, as to the treatment provided on November 12, 2021, plaintiff's allegations "constitute[], at most, a difference of opinion about the proper course of treatment[.]" Darby, 14 F.4th at 129. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." Chance, 143 F.3d at 703. Plaintiff has

thus failed to state a claim against APRN Sachour based on her treatment on November 12, 2021, other than as to the continued denial of physical therapy.

At this stage, the Court will permit plaintiff's claims regarding physical therapy to proceed for further development against APRN Sachour in her individual capacity for damages. This is without prejudice to the filing of a motion to dismiss, if appropriate.

Plaintiff's claim that APRN Sachour should have investigated RN Cummings' allegedly false Incident Report does not support a claim for deliberate indifference to medical needs. The Court has already determined that plaintiff's claims regarding the Incident Report prepared by RN Cummings are insufficient to state a claim for deliberate indifference. APRN Sachour's responses to plaintiff's complaints <u>about</u> that report likewise do not support such a claim.

In sum, plaintiff's Complaint may proceed to service of process against APRN Sachour in her individual capacity for damages as to plaintiff's claims that APRN Sachour refused to provide him with the physical therapy ordered by UConn Health Center for plaintiff's ankle. All other claims against APRN Sachour are **DISMISSED, without prejudice.**

###### G.   Dr. Naqvi

Plaintiff alleges that Dr. Naqvi provided inadequate medical care as it pertains to each incident or condition that forms the basis of plaintiff's complaint.

As to his November 10, 2019, hand and thumb injury, plaintiff asserts that Dr. Naqvi: (1) "looked at my hand and said that he was gonna put me for an ex-ray, see a specialist, pain meds which he didn't do at that time[,]" Doc. #1-1 at 5-6; and (2) "hasn't even put me on the list for an appointment for my right hand thumb I've been complaining of pain and numbness on my hand with swollen soft tissue." Id. at 13-14.

As to his March 23, 2020, ankle injury, plaintiff asserts: (1) Dr. Naqvi "refuse[d] to see me for my injuries[,]" id. at 2; (2) "Dr. Naqvi took month to give me a x-ray in July Dr. Naqvi took a whole year to put me to see a specialist ortho[,]" id. (sic); and (3) "I have written to [Dr. Naqvi] about what is going wit[h] medical and no respon[se] back[.]" Id.

As to the physical therapy that was prescribed in 2021 by the UConn Health Center for his ankle, plaintiff asserts: (1) the orthopedic specialist ordered "physical therapy exercise with a rubber band in medical also a[n] ankle brace [which] [Dr. Naqvi] didn't do"; id. at 7; and (2) "[a]fter I showed Dr. Naqvi my left ankle he seen it he said ok I'm gonna put the order for physical therapy, but he refuse to get me a ankle brace, ice,

Ace bandage, even when it was ordered from UConn Hospital Ortho[.]" Id. at 8 (sic).

Finally, plaintiff asserts that he again visited an orthopedic specialist following the reaggravation of his ankle injury in November 2021. See id. at 12. Plaintiff contends that the orthopedic specialist "gives me a boot and makes another order for medical to do physical therapy and order me ankle brace for Dr. Naqvi to do so." Id. (sic). Plaintiff contends that "Dr. Naqvi didn't follow those order that was put in place from UConn Hospital." Id. Consequently, plaintiff alleges that "to this day I'm still waiting for medical and Dr. Naqvi, Sahra to order me physical therapy and a ankle brace which it hasn't happen." Id. at 13 (sic).

At this stage, the Court will permit each of these claims to proceed for further development against Dr. Naqvi in his individual capacity for damages. This is without prejudice to the filing of a motion to dismiss, if appropriate.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court enters the following orders:

- All claims against Warden Barone, Nurse Supervisor Furtick, Rose Walker, RN Adam Cummings, and Shanya Graham are **DISMISSED, without prejudice.**

- Plaintiff's claims against RCOO Shea relating to her

failure to respond to his complaints and her response to his complaint taking issue with the medical system as a whole are hereby **DISMISSED, without prejudice.**

- The case may proceed to service on plaintiff's Fourteenth Amendment deliberate indifference to serious medical needs claim against RCOO Shea, in her individual capacity, for damages, based on her responses to plaintiff's complaints regarding his right hand and thumb injuries.

- The case may proceed to service on plaintiff's Fourteenth Amendment deliberate indifference to serious medical needs claim against APRN Sachour, in her individual capacity, for damages, based on her failure to provide the physical therapy ordered by UConn Health Center.

- All other claims against APRN Sachour are **DISMISSED, without prejudice.**

- The case may proceed to service on plaintiff's Fourteenth Amendment deliberate indifference to serious medical needs claim against defendant Naqvi, in his individual capacity, for damages.

Plaintiff has <u>two options</u> as to how to proceed in response to this Initial Review Order:

**OPTION 1:** Plaintiff may proceed **<u>immediately</u>** to service on defendants **Shea, Naqvi and Sachour,** in their individual

capacities, for damages, for the claims set forth above. If plaintiff selects this option, he shall file a Notice on the docket on or before **July 29, 2022,** informing the Court that he elects to proceed with service as to his remaining claims. The Court will then immediately begin the effort to serve process on these defendants in their individual capacities.

    **Or, in the alternative:**

    **OPTION 2:** Plaintiff may file an Amended Complaint, correcting the deficiencies identified in this Order. Plaintiff is advised that any Amended Complaint will <u>completely</u> replace the prior complaint in this action. No portion of the original Complaint (Doc. #1) will be incorporated into the Amended Complaint by reference, or considered by the Court. Plaintiff must identify all defendants against whom he asserts his claims in the **<u>caption</u>** of the Amended Complaint, and indicate as to each defendant whether the claims are brought against him or her in his or her official or individual capacity or both. He must also specifically describe the factual allegations against any defendant in the body of the Amended Complaint.

    Any such Amended Complaint must be filed by **July 29, 2022. The Complaint (Doc. #1) will not be served on any defendant and will have no effect if an Amended Complaint is filed.**

    If an Amended Complaint is filed, the Court will review it pursuant to 28 U.S.C. §1915A to determine whether it is

sufficient to proceed to service on any defendant. If the
Amended Complaint asserts claims that the Court has already
explained are not cognizable, such claims will be summarily
dismissed. The Court will not grant further leave to amend if
the Amended Complaint fails to state a cognizable claim.

**CHANGES OF ADDRESS**: If plaintiff changes his address at any
time during the litigation of this case, he **MUST** file a Notice
of Change of Address with the Court. **Failure to do so may result
in the dismissal of the case**. Plaintiff must give notice of a
new address even if he remains incarcerated. He should write
"PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to
just put a new address on a letter or filing without indicating
that it is a new address. He should also notify the defendants
or defense counsel of his new address.

Plaintiff shall utilize the Prisoner E-filing Program when
filing documents with the Court. He is advised that the Program
may be used only to file documents with the Court.
Discovery requests and responses should **not** be filed on the
docket, except when required in connection with a motion to
compel or for protective order. See D. Conn. L. Civ. R. 5(f).
Discovery requests and responses or objections must be served on
defendants' counsel by regular mail.

It is so ordered this 5th day of July, 2022, at Bridgeport,
Connecticut.

                                       /s/
                               HON. SARAH A. L. MERRIAM
                               UNITED STATES DISTRICT JUDGE